**No. 25-50680**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JONATHAN BRINGAS-TORRES
Defendant-Appellant

Appeal from the United States District Court
For the Western District of Texas

---

**BRIEF FOR APPELLANT**

---

Respectfully submitted,

J. Dennis Hester
4801 Woodway Dr., Suite 300
Houston, TX 77056
Tel. 325-212-8272
dennis_hester@outlook.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. District Judge: The Honorable David Counts
2. Appellant: Jonathan Bringas-Torres
3. Appellant's Counsel: Luis Alfanso Rodriguez (former); J. Dennis Hester
4. Appellee: The United States of America
5. Appellee's Counsel: United States Attorney Justin R. Simmons; Assistant United States Attorney Patrick Sloane; Assistant United States Attorney Zachary Richter.

*<u>/s/ Dennis Hester</u>*

## REQUEST FOR ORAL ARGUMENT

Appellant Johnathan Bringas-Torres requests oral argument. The issue in this appeal is whether the district court erred in refusing to apply the downward mitigating role adjustment found at USSG § 3B1.2. This involves fact-intense analysis and application of the U.S. Sentencing Guidelines. Oral argument would benefit the Court in reaching a decision.

# TABLE OF CONTENTS


Certificate of Interested Persons ……………………..………………………… i

Request for Oral Argument ………………………..……………………… ii

Table of Citations ……………………………..…………..…………… v

Statement of Jurisdiction …………………………………………………….. 1

Statement of the Issues ……………….…….………………………………….. 1

Statement of the Case ………………..………………………………………… 2

I. Indictment and the Presentence Investigation Report ……………….….… 2

II. The Guideline offense level calculation ………………………………… 4

III. PSR Objections and Sentencing ……………………..………………….. 4

Summary of the Argument ……………………….…………………………….. 6

Argument ……………………………………..…………………………….. 7

I. The district court erred by denying a mitigating role adjustment based on an improper comparison to other cases ………..….. 7

A. Standard of review ……………………………..……………… 7

B. The court improperly compared Mr. Bringas to "the heartland of" drug cases rather than making a comparison to Mr. Bringas's role in comparison to the other participants in the "case at hand" ……………………….. 7

C. The government cannot show that the error was harmless ………….. 9

II. The district court failed to consider Amendment 833, which is clarifying, when it denied the mitigating role adjustment ……. 12

A. Standard of review …………………………………….…………… 12

B. Amendment 833 applies retroactively.
It is clarifying rather than substantive .................................... 12

C. The government cannot show that the error was harmless ............ 16

Conclusion .................................................................................... 17

Certificate of Service .................................................................... 18

Certificate of Compliance ............................................................. 18

## TABLE OF CITATIONS

### Cases

*Koon v. United States*,
518 U.S. 81 (1996) .......................................................... 8

*United States v. Ahmadou*,
159 F.4th 936 (5th Cir. 2025) .......................................................... 9

*United States v. Bello-Sanchez*,
872 F.3d 260 (5th Cir. 2017) .......................................................... 8

*United States v. Sanchez-Villarreal*,
857 F.3d 714 (5th Cir. 2017) .................................. 7, 8, 12, 13, 14, 15

*United States v. Torres-Hernandez*,
843 F.3d 203 (5th Cir. 2016) .......................................................... 8

### Statutes and Rules

28 U.S.C. § 1291 .......................................................... 1

18 U.S.C. § 3742(a) .......................................................... 1

### U.S. Sentencing Guidelines

USSG § 1B1.10(d) .......................................................... 14, 15

USSG § 2D1.1(e)(2) .......................................... 11, 12, 13, 15, 17

USSG § 3B1.1 .......................................................... 9

USSG § 3B1.2 .......................................................... 9, 10, 11

USSG Ch. 5, Pt. A .......................................................... 11

USSG App. C amend. 794 .......................................................... 15

USSG App. C amend. 833 .......................................................... 14, 15, 16

**Miscellaneous**

90 Fed. Reg. 19789 .................................................................. 16

U.S. DEA, *Annual Cocaine Report FY 2024* ........................................... 9

Testimony of Kevin L. Perkins and Anthony P. Placido,
U.S. Senate Caucus on International Narcotics Control (May 5, 2010) ...... 10

## STATEMENT OF JURISDICTION

This is an appeal from a sentence and revocation of supervised release entered by the United States District Court for the Western District of Texas. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

This case presents two issues concerning the district court's application of the United States Sentencing Guidelines:

1. A mitigating role adjustment under USSG § 3B1.2 is determined by comparing the defendant's conduct to that of other participants in the case at hand. Did the district court err by rejecting a mitigating role adjustment based on a comparison of Mr. Bringas's case to the "heartland" of cases?
2. Did the district court wrongly refuse to consider Amendment 833 to the Sentencing Guidelines, which had been adopted but not implemented at the time of sentencing?

## STATEMENT OF THE CASE

### I. Indictment and the Presentence Investigation Report.

On January 22, 2025, Mr. Bringas was charged by indictment with one count of conspiracy to possess with intent to distribute cocaine along with Kevin Sanchez-Esparza ("Sanchez") and Luis Diaz-Rascon ("Diaz"). ROA.81. On April 28, 2025, Mr. Bringas pleaded guilty to the charge without a plea agreement. ROA.148

A presentence investigation report ("PSR") was issued on June 23, 2025. The PSR explained that, in December 2024, a confidential source ("CS") working with law enforcement contacted Mr. Sanchez to arrange the purchase of six kilograms of cocaine. PSR ⁋ 3.[1] The CS arranged to purchase the cocaine from Mr. Sanchez at a Kent Kwik gas station on December 20, 2024. PSR ⁋ 4.

On December 20, law enforcement surveilled Mr. Sanchez as he travelled on a motorcycle to the Kent Kwik. PSR ⁋ 5. Before the meeting, the CS text messaged Mr. Sanchez concerning the type of vehicle he was driving. PSR ⁋ 5. Mr. Sanchez stated that he was in a blue pickup truck, not a motorcycle. PSR ⁋ 5. Shortly after, law enforcement observed a blue truck parked at the Kent Kwik. PSR ⁋ 5. Officers determined that the blue truck was registered to Mr. Diaz. PSR ⁋ 5. Mr. Sanchez then texted the CS that the area was "heated up" and that he could only stay for five

---

[1] Counsel's copy of the PSR, which is under seal and was obtained from the District Clerk pursuant to an order of this Court, does not contain page references to the record on appeal. Therefore, the PSR is cited by "PSR" with a reference to the relevant paragraph number.

minutes. PSR ⁋ 6. The CS responded that they should change locations to the parking lot of a Market Street grocery store in Midland, Texas. PSR ⁋ 6.

Law enforcement then observed Mr. Diaz drive the blue truck to Mr. Sanchez's location, where the two men had a brief conversation. PSR ⁋ 6. Mr. Diaz then drove back to the Kent Kwik and had a brief conversation with Mr. Bringas, who was alone in a white GMC pickup truck. PSR ⁋ 6.

All three individuals then left the Kent Kwik together and drove toward the new meeting location. PSR ⁋ 6. At this point, law enforcement conducted a traffic stop on Mr. Diaz's blue pickup truck. PSR ⁋ 6. Mr. Diaz consented to a search and officers found approximately six kilograms of cocaine in a backpack on the rear floorboard. ROA.170.

When Mr. Diaz was stopped, officers observed Mr. Bringas entering a parking lot and then appeared to be recording the traffic stop with his cell phone. PSR ⁋ 7. As officers discovered the cocaine, Mr. Bringas drove away. PSR ⁋ 7.

Officers followed Mr. Bringas and conducted a traffic stop for failure to indicate a turn. PSR ⁋ 7. Upon a consensual search of Mr. Bringas's vehicle, officers found two baggies, which contained approximately one gram of cocaine in total. PSR ⁋ 7.

In post arrest interviews, Mr. Diaz asserted that he was working alone. PSR ⁋⁋ 8-9. Mr. Sanchez admitted to arranging the transaction but said that he did not

know Mr. Bringas. PSR ⁋⁋ 10-11. Mr. Bringas denied involvement with Mr. Diaz and denied filming the traffic stop. PSR ⁋ 14. Mr. Bringas said that he was traveling to the grocery store to purchase beer. PSR ⁋ 13.

Weeks later, on March 5, 2025, officers extracted Mr. Bringas's phone pursuant to a warrant and found phone calls to Mr. Diaz on the date of his arrest. PSR ⁋ 16. They also found that Mr. Bringas made phone calls to an unknown recipient during the search of Mr. Diaz's vehicle. PSR ⁋ 16. Finally, they found photos taken between 2022 and 2024 of multiple kilograms of suspected cocaine and of firearms. PSR ⁋ 16.

## II. The Guideline offense level calculation.

The PSR applied a base offense level of 30 because of the amount of cocaine. PSR ⁋ 23. That level was reduced by two-points because Mr. Bringas was a "zero-point" offender given his lack of criminal history. PSR ⁋ 29. The level was reduced by another three points for Mr. Bringas's acceptance of responsibility. PSR ⁋⁋ 30, 31. The total offense level was 25, and the criminal history category was I. PSR ⁋ 59. Accordingly, the range of imprisonment was 57 to 71 months. PSR ⁋ 59.

## III. PSR Objections and Sentencing.

On August 1, 2025, Mr. Bringas filed a motion for downward variance from the Sentencing Guidelines range. D.E. 91. He argued that the offense level should be reduced pursuant to the mitigating role adjustment in USSG § 3B1.2. D.E. 91 at

1-5. He argued that he was less culpable than the "average participant" in the offense. D.E. 91 at 3-4. He further asserted that Amendment 833 to USSG § 2D1.1, which would become effective in November of 2025, clarified that he should receive the downward adjustment. D.E. 91 at 1-3. Specifically, the amendment listed "acting as a lookout" as one of the lowest level functions in a drug case that would "generally warrant" a four-level decrease to the offense level pursuant to § 3B1.2(a).

The government filed a response opposing the mitigating role adjustment. D.E. 93. At 10-11. Probation did not file an addendum to the PSR regarding the mitigating role adjustment.

The sentencing hearing was held on August 8, 2025. Mr. Bringas argued for a downward departure under § 3B1.2. ROA.158-59. Specifically, based on his limited knowledge and his lower involvement in comparison to the other participants in the offense. ROA.158-59. He also raised Amendment 833 to the Guidelines. ROA.157-59. The district declined to apply the § 3B1.2 adjustment, stating:

> The Court respectfully denies the motion for variance, finding that the case lies squarely within the heartland of the these type of cases and that the guidelines are accurately calculated and that the – any, I guess, anticipated relief that the Commission is considering or passing – that I don't believe it would apply anyway.

ROA.161.

In line with the PSR, the court indicated that the Guideline range for imprisonment was 57 to 71 months. ROA.155. It sentenced Mr. Bringas within that

range, to 65 months of incarceration and a three-year term of supervised release. ROA.162. A judgment reflecting the pronounced sentence was issued on August 20, 2025. ROA.67.

## SUMMARY OF THE ARGUMENT

The district court erred by denying Mr. Bringas's request for a mitigating role adjustment under USSG § 3B1.2 by comparing his conduct to the "heartland" of other cases. The law establishes that a defendant's role must be determined by comparison to the "average participant" in the "case at hand," not to outside cases. The error was not harmless beyond a reasonable doubt because, under the proper standard, Mr. Bringas was the least culpable of other participants in the "case at hand." He acted as a mere lookout, did not instruct others, did not handle drugs, and had no proprietary interest in the drugs.

The district court also erred by refusing to consider the guidance of Amendment 833 to the Sentencing Guidelines, which had been adopted but was not effective at the time of sentencing. Amendment 833 should have been considered because it is clarifying rather than substantive. It did not amend the language of § 3B1.2 and was intended to provide guidance to district courts when applying § 3B1.2. That guidance identifies "acting as a lookout" as one of the lowest level participants who is generally deserving of a four-level Guideline reduction pursuant to § 3B1.2(a). This error was not harmless beyond a reasonable doubt because Mr.

Bringas—who acted as a lookout—is exactly the type of participant for whom an adjustment is "generally warranted."

## ARGUMENT

### I. The district court erred by denying a mitigating role adjustment based on an improper comparison to other cases.

#### A. Standard of review.

Mr. Bringas requested a "downward departure" for his mitigating role in the offense. ROA.159. Both at the hearing and in his written filings, Mr. Bringas argued that § 3B1.2 supports a mitigating role adjustment because he was less involved than other participants. ROA.157-58 (sentencing hearing); D.E. 91 at 3-4 (motion for downward variance).

This issue is, therefore, preserved. This Court reviews the interpretation and application of the Guidelines *de novo* and the district court's factual finding that Mr. Bringas was not a minor participant for clear error. *United States v. Sanchez-Villarreal*, 857 F.3d 714, 721 (5th Cir. 2017). If the district court made a legal error that affected the factual findings, remand is proper unless the record permits only one resolution of the factual issue. *Id*.

#### B. The court improperly compared Mr. Bringas to "the heartland of" drug cases rather than making a comparison to Mr. Bringas's role in comparison to the other participants in the "case at hand."

The district court offered little explanation for denying the mitigating role adjustment except that Mr. Bringas's conduct fell within "the heartland of these type

of cases." ROA.161. This was an improper comparison to cases other than Mr. Bringas's.

In deciding whether to apply a mitigating role adjustment, the court must compare the defendant to the "average participant." *Sanchez-Villarreal*, 857 F.3d at 722. And "[a]n average participant under § 3B1.2 means only those persons who actually participated in the criminal activity at issue in the defendant's case so that the defendant's culpability is determined *only by reference to his or her co-participants in the case at hand*." *United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017) (cleaned up, emphasis added) (quoting *United States v. Torres-Hernandez*, 843 F.3d 208-09 (5th Cir. 2016)).

Here, the district court mistakenly compared Mr. Bringas's conduct to "the heartland" of these types of cases. ROA.161. As the Supreme Court has explained, comparison to "the heartland" of cases is "determined in large part by comparison with the facts of *other* Guidelines cases." *Koon v. United States*, 518 U.S. 81, 98 (1996) (emphasis added). This is the opposite of comparing Mr. Bringas's conduct to other participants in the "case at hand." *Bello-Sanchez*, 872 F.3d at 264.

The court's improper comparison of Mr. Bringas's role to outside cases means that, as in *Sanchez-Villarreal*, the court made no finding of the "average participant" to assess whether Mr. Bringas's conduct was "substantially less culpable" than such

a participant. This is the exact type of legal error that affects the application of § 3B1.2 and requires remand. *Id*.

**C. The government cannot show that the error was harmless.**

Because this Guideline error was preserved, the government must show beyond reasonable doubt that the error was harmless, meaning that the court would have imposed the same sentence without the error. *United States v. Ahmadou*, 159 F.4th 936, 950 (5th Cir. 2025). It cannot meet that burden here.

Indeed, the record strongly supports a finding that Mr. Bringas was less culpable than the average participant in the "crime at hand" and is deserving of an adjustment under § 3B1.2.

First, in making this determination, the court must look to all "participants" in the crime, regardless of their prosecution or conviction. *See* USSG § 3B1.2 cmt. n. 1 (defining "participant" with reference to § 3B1.1 n. 1, which includes anyone who is "criminally responsible for the commission of the offense, but need not have been convicted"). Here, Mr. Bringas was the least involved of the convicted individuals, who themselves were low-level when compared to "participants" closer to the source of the six kilograms of cocaine.[2] Mr. Bringas acted as a lookout. Meanwhile, Mr.

---

2 According to the U.S. Drug Enforcement Administration almost all (over 98%) of the cocaine in the United States originates in South America. U.S. DEA, *Annual Cocaine Report FY 2024* at 10, *available at*, https://www.dea.gov/sites/default/files/2025-09/CY2024%20Annual%20Cocaine%20Report%20PRB-2025-42%20Final.pdf. According to testimony from high ranking FBI and DEA officials, 93% of that cocaine is smuggled, primarily by drug cartels, through Mexico. *See* Testimony of Kevin L. Perkins and Anthony P. Placido,

Diaz transported—and was ready to deliver—the cocaine and handle the money exchange. Mr. Sanchez communicated with the undercover agent, instructed other participants to move locations, and arranged the transaction.

The commentary to § 3B1.2 offers non-exhaustive factors for the court to consider in applying the reduction:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

USSG § 3B1.2 cmt (n. 3(C)).

These factors support a mitigating role adjustment for Mr. Bringas. He exercised no decision-making authority. He only accompanied the more involved individuals on the journey and acted as a lookout. Mr. Bringas did not handle the

---

U.S. Senate Caucus on International Narcotics Control (May 5, 2010), *available at*, https://archives.fbi.gov/archives/news/testimony/drug-trafficking-violence-in-mexico-implications-for-the-united-states.

drugs or money. Mr. Bringas had only a personal use amount of cocaine; less than one gram. The evidence showed that the CS was communicating with Mr. Sanchez, and that Mr. Sanchez exercised "discretion," "planned," and organized the transaction. It further showed that Mr. Sanchez instructed the others to change locations when the first meeting location "heated up." PSR ⁋ 6. No evidence showed that Mr. Bringas had any proprietary interest in the cocaine or that he would be paid any compensation for acting as a lookout.

This error was harmful because the application of even a two-level "minor participant" reduction under § 3B1.2(b) would have had a significant impact on Mr. Bringas's Guideline offense level. Mr. Bringas was sentenced in offense level 25 and criminal history category I. ROA.155. The range of imprisonment was 57 to 71 months. ROA.155. With a two-level reduction to offense level 23, Mr. Bringas's Guideline range would have been 46 to 57 months. USSG Ch.5, Pt. A (Sentencing Table). If Mr. Bringas received a four-level downward adjustment—and the Guideline explains such an adjustment is "generally warranted" for individuals who act as lookouts, USSG § 2D1.1(e)(2)—his range would have been 37 to 46 months. USSG Ch.5 Pt. A. A sentence in the middle of either range is significantly less than the 65 month mid-Guideline sentence that Mr. Bringas received.

The government cannot show beyond a reasonable doubt that Mr. Bringas would not have received a lower sentence if the district court had not improperly compared his conduct in this case to the "heartland" of other cases.

## II. The district court failed to consider Amendment 833, which is clarifying, when it denied the mitigating role adjustment.

### A. Standard of review.

Mr. Bringas argued that the district court should consider Amendment 833, which, among other things, indicates that a four-level reduction is "generally warranted" for individuals who act as a lookout. ROA.157-58; D.E. 91 at 1-3. Again, this issue is preserved and this Court reviews application of the Guidelines *de novo*, and the district court's factual findings for clear error. *Sanchez-Villarreal*, 857 F.3d at 721.

### B. Amendment 833 applies retroactively. It is clarifying rather than substantive.

In April of 2025, the Sentencing Commission adopted Amendment 833 to the Guidelines. *See* Fed. Reg. Notice: *Submission of 2025 Amendments to Congress, Request for Comment* (Apr. 2025).[3] The Amendment added a "special instruction" at USSG § 2D1.1(e)(2), which explained, in relevant part:

> In addition to the circumstances identified in §3B1.2, an adjustment under §3B1.2 is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function.

[3] *Available at*, https://www.ussc.gov/policymaking/federal-register-notices/federal-register-notice-submission-2025-amendments-congress-request-comment.

> (i) An adjustment under §3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout; or
>
> (ii) an adjustment under §3B1.2(b) is generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (e.g., the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense).

USSG § 2D1.1(e)(2).

Amendment 833 was given an effective date of November 2025, so it was not in effect at the time of Mr. Bringas's sentencing. However, an amendment that is not in effect at the time of sentencing may be considered if it is clarifying rather than substantive because a "clarifying" amendment is merely reflective of the Sentencing Commission's intent behind the Guideline that is already in effect. *Sanchez-Villarreal*, 857 F.3d at 719-20.

As with Amendment 794, which amended the same Guideline, *id.*, Amendment 833 is clarifying. The district court, therefore, should have applied Amendment 833's guidance in deciding whether Mr. Bringas should have received a downward adjustment under § 3B1.2. But it refused to do so.

This Court looks to several, non-determinative factors to determine if a Guideline amendment is clarifying or substantive: (1) whether the Commission expressly characterizes the amendment as clarifying; (2) whether the amendment is intended to address a circuit split, which generally indicates that the amendment is substantive; (3) whether the amendment is listed in USSG § 1B1.10(d) as retroactive; and (4) whether the amendment alters the language of the commentary rather than the language of the Guideline itself, which may suggest that it is clarifying. *Sanchez-Villarreal*, 857 F.3d at 720. These factors and the Commission's explanation for Amendment 833 show that it is clarifying.

The first factor shows that Amendment 833 is clarifying. The Commission explained that Amendment 833's purpose is to "assist courts in determining the appropriate level of reduction," and it lists examples of mitigating roles, which "provides examples of functions generally warranting an adjustment under §3B1.2(a) and (b)." USSG App'x C Am. 833 at 297. This shows that Amendment 833 is clarifying. Similarly, this Court found that Amendment 794, which also concerned § 3B1.2, was clarifying because the Commission stated that its purpose was to provide "additional guidance to sentencing courts" in applying § 3B1.2. *Sanchez-Villarreal*, 857 F.3d at 720. Amendment 833 follows the same path.

The second factor also indicates that Amendment 833 is clarifying because the amendment does not address a circuit split. No circuit split is addressed in the

Commission's explanation for the amendment. *See generally*, USSG App C Am. 833. Rather, the Commission explained that Amendment 833 was implemented because a prior amendment, Amendment 794, "did not result in a sustained increase in application of the mitigating role adjustment" in drug cases. USSG App C Am. 833 at 297. Furthermore, the Commission observed variations in application "across districts." *Id*. Similar reasons motivated Amendment 794, which was also clarifying. *Sanchez-Villarreal*, 857 F.3d at 720. For example, the Commission explained that Amendment 794 was implemented because "rates of application vary widely from district to district." USSG App. C Am. 794 at 108. Like Amendment 794, Amendment 833 seeks to clarify the various roles in a drug conspiracy that are deserving of a mitigating role adjustment. It does not address a circuit split.

The third factor weighs in favor of Amendment 833 being substantive. The Commission did not include it as retroactive in USSG § 1B1.10(d). That, however, is not dispositive. *Sanchez-Villarreal*, 857 F.3d at 720. Amendment 794 was not listed in § 1B1.10(d), but this Court found that it was clarifying. *Id*.

The fourth factor indicates that Amendment 833 is clarifying. Though Amendment 833 does amend the language of the Guidelines, it does not change the language of § 3B1.2, the specific guideline at issue in this case. Rather, it provides guiding and clarifying principles in so-called "Special Instructions" to the drug Guideline at § 2D1.1(e)(2)(B). The Commission stated that this was to "highlight

that the rules for determining § 3B1.2 eligibility are different in § 2D1.1 cases." USSG app. C Am. 833 at 297. That is a clarifying rather than a substantive purpose. On balance, Amendment 833 is a clarifying amendment and should have been considered by the district court.

**C. The government cannot show that the error was harmless.**

The district court erroneously found that Amendment 833 did not apply, and the government cannot overcome its burden to show that this error was harmless. The court did indicate that Amendment 833 would not apply to Mr. Bringas even if it were in effect. ROA.161. But that finding was prejudiced by mistaken understanding. First, it was made in relation to an improper comparison to other cases, as explained above. Second, the district court indicated that Amendment 833 was merely "anticipated relief that the Commission is considering or passing." ROA.161. That is mistaken because Amendment 833 was adopted in April 2025, well before Mr. Bringas's sentencing hearing in August 2025. *See* 90 Fed. Reg. 19789, 19801 *Submission of 2025 Amendments to Congress, Request for Comment* (May 2025).[4] The amendment had not become effective, but it had been promulgated and the Commission requested public comment on whether it should apply

[4] *Available at*, https://www.ussc.gov/policymaking/federal-register-notices/federal-register-notice-submission-2025-amendments-congress-request-comment.

retroactively. *Id*. Therefore, the Commission was not merely "considering or passing" the amendment—it had already done so.

Further, Amendment 833 states that a four-level reduction is "generally warranted" for individuals who act as a lookout. USSG § 2D1.1(e)(2)(B)(i). If the district court had properly considered this language, the outcome may have been different. The government again cannot overcome its burden to show that the district court's failure to consider Amendment 833 was harmless beyond reasonable doubt. This case should be remanded and, upon remand, the district court should fully consider the clarifying principles of Amendment 833, found at USSG § 2D1.1(e)(2)(B), when resentencing Mr. Bringas.

## CONCLUSION

The sentence should be vacated, and the case remanded for resentencing.

Respectfully submitted,

*/s/ Dennis Hester*

J. Dennis Hester
TX State Bar No. 24065415
4801 Woodway Dr., Suite 300
Houston, TX 77056
Tel. 325-212-8272

## CERTIFICATE OF SERVICE

This brief was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF system.

*/s/ Dennis Hester*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) & (f) because it contains 3,805 words.

2. This brief complies with the typeface and type style requirements of FED. R. APP. P. 32(a)(5)-(6) because it has been prepared with the current version of Microsoft Word software, Microsoft Office 365 edition, using the proportionally spaced, Times New Roman typeface in the text (14-point) and footnotes (12-point).

3. This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4. This brief complies with the privacy-redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

5. This brief complies with the electronic submission requirement of 5th Cir. R. 25.2.1 because it is an exact copy of the paper document.

6. This brief has been scanned for viruses with the most recent version of a commercial antivirus scanning program and is free of viruses.

*/s/ Dennis Hester*